# Supreme Court of Texas

═══════════

No. 24-0052

═══════════

Kelly Hancock, Acting Comptroller of Public Accounts of the State of Texas; The Office of the Comptroller of Public Accounts of the State of Texas; and Ken Paxton, Attorney General of the State of Texas,

*Petitioners*,

v.

RJR Vapor Co., LLC,

*Respondent*

═══════════════════════

On Petition for Review from the
Court of Appeals for the Third District of Texas

═══════════════════════

**Argued October 8, 2025**

JUSTICE BUSBY delivered the opinion of the Court, in which Chief Justice Blacklock, Justice Devine, Justice Bland, Justice Huddle, and Justice Young joined.

JUSTICE SULLIVAN filed a concurring opinion, in which Justice Bland joined.

Justice Lehrmann and Justice Hawkins did not participate in the decision.

This tax-refund case concerns what counts as a "[t]obacco product" under the Tax Code. Specifically, we are asked whether oral nicotine pouches are taxable as "product[s] that [are] made of tobacco or a tobacco substitute." TEX. TAX CODE § 155.001(15)(E). We conclude such pouches are "made of . . . a tobacco substitute" because they are products in which non-tobacco plant matter and nicotine take the place and function of tobacco as it is used in expressly taxed tobacco products. We reverse the court of appeals' judgment to the contrary, render judgment that the pouches are taxable, and remand for the court of appeals to consider the taxpayer's constitutional challenge.

## BACKGROUND

Respondent RJR Vapor sells oral nicotine products throughout Texas. These products include nicotine pouches sold under the brand name VELO. VELO pouches are made of a porous fleece material and filled with a dry powdered mixture, somewhat like a tea bag. The user places the VELO pouch between the cheek and gum—the same place as chewing tobacco, moist snuff (loose pulverized tobacco leaf), or snus (pulverized tobacco leaf enclosed in a pouch)—to absorb the flavors and nicotine inside. Traditional tobacco pouches are filled with finely ground, cut, or pulverized tobacco leaf, which is combined with water, various flavorings, and preservatives.[1] But the primary ingredient in VELO pouches is microcrystalline cellulose, a naturally occurring

---

[1] *All about: Snus, snuff, and nicotine pouches*, PHILIP MORRIS INT'L, https://www.pmi.com/our-science/snus-snuff-nicotine-pouches-explained/ (last visited May 1, 2026).

organic compound found in the cell walls of plants.[2]  This plant matter is infused with nicotine isolate—99% pure nicotine that is chemically extracted from tobacco leaves—and combined with water, various flavorings, and preservatives.

When RJR introduced VELO to the Texas market, it sought a general information letter from the Comptroller addressing whether its VELO pouches would be taxed as "[t]obacco product[s]" under the Cigars and Tobacco Products Tax (the "Tax").  *See generally* TEX. TAX CODE §§ 155.001-.2415.  The Comptroller concluded that VELO pouches are taxable as "[t]obacco product[s]" because they contain nicotine extracted from tobacco leaves.  RJR paid the Tax under protest and filed this suit. *See id.* §§ 112.051-.060 (permitting protest payments).  RJR sought a tax refund and a declaratory judgment that VELO pouches are not taxable tobacco products.  RJR also asserted various constitutional challenges to the Tax.

Both sides moved for summary judgment on whether VELO pouches are "[t]obacco product[s]" under the Tax Code.  The trial court denied the Comptroller's motion and granted RJR's, holding that VELO pouches are not "[t]obacco product[s]."  Following a bench trial, the court granted RJR a refund and ruled that the phrase "made of tobacco or a tobacco substitute" is unconstitutional, both facially and as applied.

---

[2] *Cellulose*, CAMBRIDGEDICTIONARY.ORG, https://dictionary.cambridge. org/us/dictionary/english/cellulose (last visited May 1, 2026); *Cellulose*, ENCYCLOPEDIA BRITTANICA, https://www.britannica.com/science/cellulose (last visited May 1, 2026); *Cellulose*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/cellulose (last visited May 1, 2026).

The court of appeals affirmed the trial court's judgment in part, holding that VELO pouches are not taxable tobacco products. 681 S.W.3d 867, 879, 882 (Tex. App.—Austin 2023). It held that VELO pouches are not "made of tobacco" because no part of the tobacco plant remains in the nicotine isolate used in VELO pouches. *Id.* at 879. It also held that VELO pouches are not "made of . . . a tobacco substitute" because nicotine isolate alone cannot take the place or function of tobacco leaves. *Id.* at 881-82. The court of appeals declined to assess the constitutionality of the Tax, holding that because the court determined VELO pouches are not taxable tobacco products, RJR's constitutional challenges were "moot." *Id.* at 882-85. The Comptroller filed a petition for review, which we granted.

## STANDARD OF REVIEW

We review de novo questions of statutory construction like the one at the heart of this case. *Colorado County v. Staff*, 510 S.W.3d 435, 444 (Tex. 2017). To determine a statute's meaning, "we look first and foremost to the plain and common meaning of the statute's words and to the definitions it provides, 'unless a different meaning is apparent from the context.'" *Hegar v. Am. Multi-Cinema, Inc.*, 605 S.W.3d 35, 40-41 (Tex. 2020) (quoting *Staff*, 510 S.W.3d at 444). "[I]f a different, more limited, or precise definition is apparent from the term's use in the context of the statute, we apply that meaning." *Id.* at 41 (quoting *State v. $1,760.00 in U.S. Currency*, 406 S.W.3d 177, 180 (Tex. 2013)).

"When the words read in context are clear, they determine intent; a court must never rewrite them under the guise of interpretation." *Id.* We may look beyond the text for assistance in determining intent only

4

if the words read in context are susceptible to more than one interpretation or if their plain meaning leads to absurd or nonsensical results. *Id.*

## ANALYSIS

The Tax Code imposes a weight-based tax on "tobacco products." TEX. TAX CODE § 155.0211(a). It defines "[t]obacco product" as:

> (A) a cigar;
>
> (B) smoking tobacco, including granulated, plug-cut, crimp-cut, ready-rubbed, and any form of tobacco suitable for smoking in a pipe or as a cigarette;
>
> (C) chewing tobacco, including Cavendish, Twist, plug, scrap, and any kind of tobacco suitable for chewing;
>
> (D) snuff or other preparations of pulverized tobacco; or
>
> (E) an article or product that is *made of tobacco or a tobacco substitute* and that is not a cigarette or an e-cigarette as defined by Section 161.081, Health and Safety Code.

*Id.* § 155.001(15) (emphasis added).

The parties disagree about whether VELO pouches are either "made of tobacco" or "made of . . . a tobacco substitute" under subsection (E). We hold that they are "made of . . . a tobacco substitute" and are therefore taxable tobacco products.

## I. VELO pouches are "made of . . . a tobacco substitute" because non-tobacco plant matter and nicotine take the place and function of tobacco in taxed products.

The parties offer different interpretations of the phrase "made of . . . a tobacco substitute." The Comptroller contends that VELO pouches are made of a tobacco substitute because nicotine consumed

5

recreationally is a replacement for tobacco. RJR, for its part, argues that nicotine alone cannot replace tobacco under the plain meaning of the words and that "tobacco substitute" has a specific definition in the tobacco industry that is limited to plant-based ingredients that replace tobacco in certain tobacco products.

We conclude neither interpretation is quite right. Instead, "tobacco substitute" includes VELO's blend of plant matter and nicotine, which takes the place and function of tobacco as it is used in tobacco products expressly subject to the Tax.

### A. The Comptroller's interpretation is incorrect because nicotine used recreationally is not a tobacco substitute.

The Comptroller argues that nicotine is a "tobacco substitute," but only if it is consumed recreationally. We disagree for two reasons: (1) nicotine alone cannot take the place or function of tobacco in any of the expressly taxed tobacco products, and (2) the statute does not rely on the purpose for which a substitute is used to determine its taxability.

The Comptroller makes the practical point that many people use products containing nicotine instead of tobacco when trying to quit traditional tobacco products. Therefore, he argues, nicotine products are tobacco substitutes. But the statute taxes products "*made of . . . a tobacco substitute.*" TEX. TAX CODE § 155.001(15)(E) (emphasis added). So even if nicotine products are a substitute for tobacco products, that does not necessarily tell us whether nicotine products are "made of" something that is a substitute for tobacco. The relevant question under the statutory text is not whether VELO pouches are a substitute for traditional tobacco products; it is whether some ingredient that VELO

6

pouches are "made of"—nicotine, in the Comptroller's view—is a substitute for tobacco in those traditional products.

We hold that nicotine alone is not a "tobacco substitute." A substitute is "a person or thing that takes the place or function of another." *Substitute*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/substitute (last visited May 1, 2026); *Substitute*, Bryan A. Garner, GARNER'S DICTIONARY OF LEGAL USAGE 858 (3d ed. 2011) (similar); *Substitute*, WEBSTER'S NEW INTERNATIONAL DICTIONARY 2280 (3d ed. 1961) (similar). The nicotine isolate in VELO pouches, which typically makes up only five percent of oral nicotine pouches by weight, cannot physically take the place or function of tobacco in any of the products taxed under subsections (A) through (D). You cannot roll a cigar with just nicotine isolate. *See* TEX. TAX CODE § 155.001(15)(A). You cannot smoke a pipe filled with just nicotine isolate. *Id.* § 155.001(15)(B). You cannot chew just nicotine isolate. *Id.* § 155.001(15)(C). You cannot dip or sniff just nicotine isolate, and you cannot fill a pouch with just nicotine isolate. *Id.* § 155.001(15)(D).[3]

The Comptroller also suggests that the purpose for which a tobacco substitute is used plays a role in the taxability analysis. In his

---

[3] The concurrence rightly points out that nicotine is the valuable ingredient in VELO pouches, not the accompanying plant matter. *Post* at 2-3 (Sullivan, J., concurring *dubitante*). But as we explain below, if the Legislature wanted to tax nicotine products, it is unlikely that e-cigarettes (a popular method of imbibing nicotine) would have been specifically excluded. In addition, the Tax is weight-based, making it a poor fit for nicotine products that lack plant matter with properties similar to tobacco. *See* TEX. TAX CODE § 155.0211.

7

view, the Legislature intended to tax only products that allow the user to imbibe nicotine recreationally. This reading makes sense only if we agree that the statute's text demonstrates a clear purpose to tax recreational nicotine products and nothing else. *See Staff*, 510 S.W.3d at 444 (citation omitted). The statute's text is silent on its purpose. And neither the term "recreational" nor the term "nicotine" can be found anywhere in the Cigars and Tobacco Products Tax.

Moreover, the exclusion of e-cigarettes from any tax whatsoever cuts against the idea that the Legislature wanted to tax the sale of recreational nicotine products. Indeed, e-cigarettes are not taxed in Texas under the Cigars and Tobacco Products Tax at issue (where they are expressly excluded) or under the Cigarette Tax (where the definition of "cigarette" was constructed to exclude them). *See* TEX. TAX CODE § 155.001(15)(E) (excluding e-cigarettes from the Cigars and Tobacco Products Tax); *id.* § 154.001(2) (defining "cigarette" in the Cigarette Tax as "a roll for smoking" that is "made of tobacco"). If the Legislature's goal were to tax products that allow the user to imbibe nicotine recreationally, e-cigarettes would have made the list.

For these reasons, we decline to adopt the Comptroller's interpretation that nicotine alone is a "tobacco substitute" when used for recreational purposes.

### B. RJR's interpretation is incorrect because it limits the term "tobacco substitute" to certain products.

We next consider RJR's proposed definition, which would limit the term "tobacco substitute" to one of two industry definitions. We decline to adopt these limited definitions because both the text and the

8

record indicate that the phrase "tobacco substitute" bears its plain meaning and includes replacements for tobacco used in any product similar to those enumerated in subsections (A) through (D) of the Tax.

RJR argues that the phrase "tobacco substitute" possesses a special, limited meaning in the tobacco industry. Although we have used the industry meaning of a term in construing tax statutes,[4] we are not convinced that this term has as limited a meaning as RJR suggests.

According to RJR, the industry meaning of "tobacco substitute" is either (1) reconstituted tobacco sheets or (2) plant material that either partially or completely replaces tobacco leaf in certain products.

RJR offers historical evidence that, around the time the statute was originally enacted, the phrase "substitutes for natural leaf tobacco" may have referred to reconstituted tobacco sheets. But reconstituted tobacco sheets are made of stems and other scraps of leaf tobacco. Therefore, these sheets *are* tobacco, not a "tobacco substitute."

RJR contends that the tobacco industry has also used the phrase "tobacco substitute" to refer to plant material—such as lettuce, hemp, cloves, and mugwort—that replaces tobacco leaf in certain products. In the trial court, RJR argued that this definition was strictly limited to smokable substitutes for leaf tobacco in cigarettes and cigars. But the record suggests that industry discussion of tobacco substitutes was mostly limited to cigarette fillers because cigarettes were the most

---

[4] *See* TEX. GOV'T CODE § 311.011(b) ("Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."); *Am. Multi-Cinema, Inc.*, 605 S.W.3d at 43 (adopting more precise industry meanings of production and distribution in movie taxation statute).

popular tobacco product at the time. Moreover, the sources RJR cites also contemplate tobacco substitutes being used in "chewing compositions" like gum.

In this Court, RJR argues that the industry definition also extends to plant material that either partially or completely replaces tobacco leaf in alternatives to chewing tobacco. As we explain next, this definition more closely tracks the plain meaning of the statute's words. But we disagree with RJR's position that the definition does not cover VELO pouches.

### C. Products "made of . . . a tobacco substitute" include those composed primarily of non-tobacco plant matter and nicotine that take the place and function of tobacco.

RJR argues that nicotine isolate by itself is not a "tobacco substitute" under either the technical definitions or the plain meaning of the statute's words because nicotine isolate "cannot be smoked, chewed, or used as snuff." As explained in Part I.A., we agree. But VELO pouches contain other ingredients, and the primary ingredient is processed plant matter (microcrystalline cellulose). We hold that the blend of plant matter and nicotine isolate that VELO pouches are "made of" is a "tobacco substitute" because it takes the place of and serves a similar function to the pulverized tobacco taxed under subsection 155.001(15)(D). This result follows from the plain meaning of the statutory terms.

The statute imposes a tax on products that are "made of . . . a tobacco substitute." TEX. TAX CODE § 155.001(15)(E). We analyze the plain meaning of each of these words in turn. The plain meaning of the

10

phrase "made of" is "composed of." When a product is "made of" a substance, that substance is the primary ingredient or component in that product—e.g., "houses made of stone." *Make*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/make (last visited May 1, 2026) ("Make" means "to put together from components . . . [e.g.,] houses *made of* stone") (emphasis altered); *see also Make*, WEBSTER'S NEW INTERNATIONAL DICTIONARY 1363 (3d ed. 1961) (same). Thus, a product that is "made of . . . a tobacco substitute" must be primarily composed of an ingredient or ingredients that are a "tobacco substitute."

The plain meaning of "tobacco" is the plant matter (i.e., leaves or stem) of the tobacco plant. From the time the statutory language was first enacted, dictionaries have typically defined "tobacco" by reference to the plant or its leaves. *See, e.g.*, *Tobacco*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/tobacco (last visited May 1, 2026) (defining tobacco as "plants of the nightshade family," especially "*N. tabacum*," "cultivated for its leaves" and "the leaves of cultivated tobacco prepared for use in smoking or chewing or as snuff"); *Tobacco*, WEBSTER'S NEW INTERNATIONAL DICTIONARY 2402 (3d ed. 1961) (defining "tobacco" as "a plant of the genus *Nicotiana* esp. when cultivated for its leaves"); *Tobacco*, WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY 1917 (2d ed. 1960) (similar).[5] So a product that is

---

[5] Consistently, the statute defines "raw tobacco" as "any part of the tobacco plant, including the tobacco leaf or stem, that is harvested from the ground and is not a tobacco product." TEX. TAX CODE § 155.001(13-a). We note that the tobacco used in the products listed in subsections (A) through (D) of Section 155.001(15) is processed—whether by cutting, pulverizing, or

"made of . . . a tobacco substitute" must be composed primarily of an ingredient or ingredients that are a "substitute" for tobacco plant matter.

And the plain meaning of "substitute," as discussed above, is "a person or thing that takes the place or function of another." *Substitute*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/substitute (last visited May 1, 2026); *Substitute*, Bryan A. Garner, GARNER'S DICTIONARY OF LEGAL USAGE 858 (3d ed. 2011) (similar); *Substitute*, WEBSTER'S NEW INTERNATIONAL DICTIONARY 2280 (3d ed. 1961) (similar). When applied to an article or product, as here, the functional term "substitute" suggests a flexible category—one that can shrink or grow as technology and consumer preferences change—rather than a fixed set of existing articles or products.

Taken together, these definitions show that products "made of . . . a tobacco substitute" are those in which the primary ingredients or components take the place or function of tobacco plant matter.

In addition to the plain meaning of the terms, statutory context also informs our understanding of this provision. *See* TEX. GOV'T CODE § 311.011(a); *Pub. Util. Comm'n v. Luminant Energy Co.*, 691 S.W.3d 448, 460 (Tex. 2024) (explaining that statutory text "must always be read 'in context—not isolation'") (quoting *State v. Hollins*, 620 S.W.3d 400, 407 (Tex. 2020)). Because the relevant language in subsection (E) follows a list of specifically identified "[t]obacco product[s]" in subsections (A) through (D), products included in subsection (E) must be

---

fermenting—rather than raw. Therefore, it makes sense that "raw tobacco" would be defined separately.

from the same category of things as products included in subsections (A) through (D). *See Hilco Elec. Coop. v. Midlothian Butane Gas Co.*, 111 S.W.3d 75, 81 (Tex. 2003) (applying rule of *ejusdem generis*, "which provides that when words of a general nature are used in connection with the designation of particular objects or classes of persons or things, the meaning of the general words will be restricted to the particular designation"). The *ejusdem generis* canon counsels in favor of interpreting "tobacco substitute" to mean a substitute for tobacco as it is used in traditional tobacco products like those listed in (A) through (D).

Another contextual clue also supports this reading: the imposition of the Tax by weight. *See* TEX. TAX CODE § 155.0211. Plant materials have similar weight properties and therefore will be taxed similarly, so it makes sense that a tobacco substitute would be an ingredient with properties similar to those of tobacco plant matter.

In plain English, then, "an article or product that is made of . . . a tobacco substitute" in subsection (E) refers to goods whose primary ingredients or components take the place or function of tobacco plant matter as it is used in cigars, smoking tobacco, chewing tobacco, pulverized tobacco, or other similar taxed tobacco products. *Id.* § 155.001(15)(A)-(E).

VELO pouches fit this definition. The primary ingredient in a VELO pouch is a blend of powdered microcrystalline cellulose (plant matter) and nicotine isolate. RJR's expert said as much: "Instead of leaf or cut tobacco typically seen in traditional tobacco products such as cigarettes, the primary ingredient within a VELO pouch is powdered

13

microcrystalline cellulose."  This plant-matter-and-nicotine blend is a one-for-one replacement for the tobacco plant matter in the pulverized tobacco products taxed under subsection (D).

Pulverized tobacco is used in a variety of products including dry snuff, moist snuff (also called dip), and snus.[6] To use moist snuff or snus, a pinch of pulverized tobacco is placed in the mouth, between the cheek or lip and gum, where the user can absorb the flavors and nicotine. Although moist snuff is loose, snus products contain the pulverized tobacco in a small porous pouch.[7]

A VELO pouch is essentially a type of snus—a porous pouch that is filled with cellulose and nicotine isolate instead of pulverized tobacco. In VELO pouches, the cellulose provides the filling for the pouch, ensuring it has a similar weight and feel as finely ground tobacco plant matter (which is especially important given that the Tax is weight-based).  And the nicotine isolate provides the experience of consuming nicotine, ensuring the pouch produces the same chemical response as the tobacco plant matter would in a traditional tobacco pouch.  In short, the primary ingredient in VELO pouches—a blend of powdered cellulose and nicotine isolate—takes the place and function of the tobacco plant matter in snus, a "preparation[] of pulverized tobacco"

---

[6] *Snuff*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/snuff (last visited May 1, 2026); *Snus*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/snus (last visited May 1, 2026).

[7] *All about: Snus, snuff, and nicotine pouches*, PHILIP MORRIS INT'L, https://www.pmi.com/our-science/snus-snuff-nicotine-pouches-explained/ (last visited May 1, 2026).

14

that is taxable under subsection (D).  TEX. TAX CODE § 155.001(15)(D).
VELO pouches are therefore "made of . . . a tobacco substitute."  *Id.*
§ 155.001(15)(E).

Finally, treating the blend of powdered cellulose and nicotine
isolate in VELO pouches as a "tobacco substitute" aligns with the
historical use of the term.  As we explain above, the industry has used
the term "tobacco substitute" mostly in the context of cigarettes because
cigarettes were the most popular tobacco product for decades.  But the
very historical sources RJR cites describe nicotine-infused chewing gum
as "an ideal smoking substitute" and mention cellulose as a possible
tobacco substitute.  Moreover, RJR's tobacco expert indicated that the
term "tobacco substitute" might include a "moist snuff substitute" made
of "tea or coffee leaf" and consumed like moist snuff.  If tea leaves can be
a substitute for the tobacco in moist snuff, the cellulose and nicotine in
VELO can be a substitute for the pulverized tobacco in snus.

Overall, the record suggests that the term "tobacco substitute"
typically referred to substitutes used in cigarettes, but that is because
the word "substitute" was used according to its plain meaning.  Under
that plain meaning, VELO pouches are "made of . . . a tobacco
substitute."

In sum, we hold that VELO pouches are "made of . . . a tobacco
substitute" because the primary ingredient in VELO pouches is a blend
of powdered non-tobacco plant matter and nicotine, which together take
the place and function of taxable pulverized tobacco.[8]  Accordingly, the

---

[8] We need not determine whether cellulose without nicotine would
count as a "tobacco substitute" because VELO pouches contain both.

pouches are taxable under subsection 155.001(15)(E) of the Tax Code, and the courts below erred in holding otherwise.

## II. We remand RJR's remaining constitutional challenge to the court of appeals.

RJR argues that even if VELO pouches are taxable, the Tax is unconstitutional. RJR asserts two constitutional challenges in this Court.[9] First, RJR argues the Comptroller's interpretation of the Tax generates unconstitutional vagueness. Second, RJR argues the Comptroller's application of the Tax violates the Texas Constitution's requirement that taxes be "equal and uniform." TEX. CONST. art. VIII, § 1(a). We hold that RJR's void-for-vagueness argument is inapt. But we remand its equal-and-uniform challenge for the court of appeals to address in the first instance.

### A. RJR's constitutional claims were not moot.

We begin by observing that although the court of appeals did not need to reach RJR's constitutional challenges because it held VELO pouches were not taxable, that court incorrectly labeled those challenges "moot." 681 S.W.3d at 882-85. Properly understood, the constitutional challenges were alternatives to RJR's claim that the Tax is inapplicable by the plain terms of the statute. Although the principle of constitutional avoidance dictated that the challenges should not be

---

[9] RJR argued below that the statute was an unconstitutionally overbroad restriction on speech. But it has all but dropped that argument in this Court, relegating it to a single footnote. *See* Resp. Br. 64 n.17. RJR also previously argued that the Tax violated the Equal Protection Clause of the United States Constitution, but it has not raised that argument in this Court.

reached if RJR prevailed on the statutory construction issue,[10] they were not moot in the jurisdictional sense. And because we have held that VELO pouches are taxable under the statute, those challenges must now be considered.

## B. RJR's vagueness challenge is duplicative.

RJR invokes the void-for-vagueness doctrine, arguing that the Tax is unconstitutionally vague as the Comptroller has interpreted and applied it. But RJR does not explain how the vagueness challenge it asserts here adds anything to two doctrines that are already well-established in our tax jurisprudence: (1) the longstanding presumption that ambiguity in tax statutes is resolved in favor of the taxpayer; and (2) the Texas Constitution's requirement that taxation be equal and uniform, with similar products treated alike. Because we have concluded that the statute unambiguously applies to VELO pouches, only the equal-and-uniform challenge remains, and no separate analysis of RJR's vagueness challenge is necessary.

A vague statute can offend due process in two ways. *See Tex. Dep't of Ins. v. Stonewater Roofing, Ltd.*, 696 S.W.3d 646, 660 (Tex. 2024). First, it can "fail[] to give fair notice" of the conduct it prohibits, "forcing ordinary people to guess at the statute's meaning." *Id.* Second, its language can be "so unclear that it invites arbitrary or discriminatory enforcement." *Id.*

---

[10] *Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 283 n.6 (Tex. 2018) ("A court will not pass on the constitutionality of a statute if the particular case before it may be decided without doing so.") (quoting *S.A. Gen. Drivers, Helpers Loc. No. 657 v. Thornton*, 299 S.W.2d 911, 915 (Tex. 1957)).

None of the cases RJR cites—state or federal—holds a tax statute void for vagueness.[11] To our knowledge, this Court has not reviewed a tax statute for vagueness. And at the federal level, vagueness challenges to tax statutes are rare and typically unsuccessful, especially when no criminal penalties are involved.

One reason for the lack of vagueness cases regarding tax statutes may be that other doctrines more commonly serve the same functions in this context. Similar to the first vagueness concern, we have long held that taxes must apply unequivocally, with clear and unambiguous language, so that taxpayers have fair notice they are subject to the tax. *TracFone Wireless, Inc. v. Comm'n on State Emerg. Commc'ns*, 397 S.W.3d 173, 182 (Tex. 2013). To implement this important rule, we apply a pro-taxpayer presumption, construing the reach of ambiguous tax statutes strictly against the taxing authority. *Id.* No such concern is implicated here, however, as we have held that the Tax

---

[11] *See TracFone Wireless, Inc. v. Comm'n on State Emerg. Commc'ns*, 397 S.W.3d 173 (Tex. 2013) (invalidating cellphone-carrier tax statute as either ambiguous or unconstitutional double taxation); *United States v. Davis*, 588 U.S. 445 (2019) (holding statute creating mandatory minimum sentences was unconstitutionally vague); *Sessions v. Dimaya*, 584 U.S. 148 (2018) (holding provision of Immigration and Nationality Act was impermissibly vague); *Village of Hoffman Estates v. Flipside*, 455 U.S. 489 (1982) (holding village ordinance licensing and regulating the sale of certain items was not unconstitutionally vague); *Johnson v. United States*, 576 U.S. 591 (2015) (holding criminal law imposing increased sentence was unconstitutionally vague); *Grayned v. City of Rockford*, 408 U.S. 104 (1972) (holding city noise ordinance was not unconstitutionally vague); *Giaccio v. Pennsylvania*, 382 U.S. 399 (1966) (holding statute authorizing jury to impose cost of criminal prosecution on acquitted defendant was unconstitutionally vague).

unambiguously applies to VELO pouches. It is therefore unnecessary to consider whether the Tax might be ambiguous in other applications. *See Stonewater Roofing*, 696 S.W.3d at 660 & n.61.

As to the second vagueness concern involving arbitrary or discriminatory enforcement, the constitutional guarantee of equal and uniform taxation similarly requires that legislative and regulatory tax classifications "attempt to group similar things and differentiate dissimilar things" as they relate to the tax's purpose. *In re Nestle USA, Inc.*, 387 S.W.3d 610, 622 (Tex. 2012). Although we do not foreclose the possibility that a vagueness analysis could do independent work in this context, RJR's briefing here reveals that its vagueness and equal-and-uniform challenges asserting arbitrary enforcement largely overlap. Accordingly, there is no need for a distinct analysis of RJR's vagueness challenge.

## C. Only RJR's equal-and-uniform challenge remains.

The trial court determined that the Tax violates RJR's right to equal and uniform taxation under the Texas Constitution because the Comptroller applies the Tax to VELO pouches but not nicotine replacement therapies. TEX. CONST. art. VIII, § 1(a). As we have explained, the court of appeals did not reach this challenge. *See* 681 S.W.3d at 884-85. We therefore follow our preferred practice and remand for the court of appeals to assess whether the Tax or its enforcement violates the Texas Constitution's requirement that taxes be equal and uniform. *See In re Troy S. Poe Tr.*, 646 S.W.3d 771, 780-81 (Tex. 2022) (explaining the Court's ordinary practice of remanding

19

unaddressed questions, especially constitutional questions of widespread import, to the court of appeals to be addressed in the first instance).

## CONCLUSION

We hold that the VELO pouches sold by RJR Vapor are "made of . . . a tobacco substitute" because they are made of a blend of plant matter and nicotine that takes the place and function of pulverized tobacco plant matter in expressly taxed tobacco products like snus or moist snuff. We therefore reverse the court of appeals' judgment and render judgment that VELO pouches are taxable tobacco products under subsection 155.001(15)(E) of the Tax Code. *See* TEX. R. APP. P. 60.2(c). We remand for the court of appeals to address RJR's equal-and-uniform challenge to the Tax. *Id*. R. 60.2(d).

J. Brett Busby
Justice

**OPINION DELIVERED:** May 8, 2026